Our first case for argument this morning is Villasenor v. United States. Mr. Herman. Good morning, your honors. May it please the court. My name is Josh Herman. I'm here on behalf of Petitioner Defendant Majin Villasenor. Your honors, this 2255 case presents a very confusing chronology and series events caused by the equally confusing, inconsistent, and contradictory advice of trial counsel in this case. That advice we submit was objectively unreasonable and caused prejudice to the petitioner. Specifically, which advice are you referring to? I'm referring to the advice specifically to reject. The advice the defendant says he received or the device the advice the district judge found he received. Well, there's a both, your honor. The advice that Villasenor said he received and these go to both. There was an evidentiary hearing the district court found against your client essentially across the board. So you need to explain either why those findings are clearly erroneous or why your client can prevail given the district court's findings. And on that first issue, judge, for the clearly erroneous aspect, the district court. They're credibility findings. Well, their credibility. Which means they can essentially never be clearly erroneous. Well, there are some credibility findings, but there are also some characterizations of the testimony which we believe are contradicted by the record on several key aspects. And this is the record at the evidentiary hearing. For instance, in her opinion, I believe it's at page 27, the district court commented that trial counsel never told, and I have it, there is no evidence that Lopez told Villasenor that he would beat the conspiracy charge. However, during the evidentiary hearing, trial counsel specifically said that he believed they could beat the conspiracy and contest the drug quantity. There's an inherent contradiction, and that led to the characterization that the trial counsel's advice was excessively optimistic. It was not excessively optimistic. It was detached from reality. And that reality was based in large part on the government's ability to prove just five kilograms of cocaine, which after this disastrous blind plea triggered the 20-year mandatory minimum, and also the non-viable hub-and-spoke defense, which two members of this panel quickly dispatched in the direct appeal on this case, citing ample evidence for that case, and for the existence of a conspiracy rather than simply a buyer-seller. So the district's court's conclusion regarding the characterizations of the trial counsel's advice, and also his overall legal strategy as being excessively optimistic, was clearly erroneous, we submit, as a factual matter. And to look at that again, we go back to the transcript of the change of plea, and this is July 1, 2004 change of plea, when trial counsel, the issue became whether or not the government can prove five kilograms of cocaine to trigger the 20-year mandatory minimum. Trial counsel was throwing numbers out there and almost conceding that the government could prove five for sure that there are four kilograms that were seized, and there are some other conversations regarding other kilograms. That is evidence that trial counsel was not effectively advising Mr. Villasenor as to how to proceed in this case. That evidence, excuse me, at the evidentiary hearing, trial counsel further acknowledged that there were multiple seizures of kilograms, four kilograms, the one that he referenced at the change of plea, two kilograms that had Mr. Villasenor's fingerprints on them, another seven to ten kilograms. This is simply a suicidal tactic to lead petitioner into a blind plea, only to a month later withdraw the blind plea, saddle Mr. Villasenor with now a 20-year mandatory minimum, and go to trial on a unviable defense. Trial counsel simply ignored the overwhelming nature of the evidence in this case in all of his advice, all of his advice to Mr. Villasenor, whether to cooperate or not, whether or not to accept the written plea agreement, which were both, which was tendered to petitioner on June 18, 2004, was based on... According to the district court, the lawyer advised your client to accept the prosecutor's offers, and that your client refused to do so, in part because your client consistently said that he would never cooperate with the prosecution. Now, those are the findings of fact. Are they all clearly erroneous too? Well, the findings of fact regarding Mr. Lopez's testimony, we disagree with them. I didn't ask whether you disagree with them. We would submit that they are clearly erroneous, and specifically regarding... There's also an error in, we believe, the legal analysis and the application of Strickland in this case that the district court employed, and specifically, and that it dovetails into the clearly erroneous factual findings. The district court believed that its task was to... The district court believed that its task was to determine whether, absent the positive portions of trial counsel's advice in the cover letter, a petitioner would have cooperated and received a lower sentence. We submit that the ineffective assistance of counsel analysis requires one to consider the positive aspects of trial counsel's advice, not ignore them, and then view the petitioner's decisions through that advice. So here, that advice was trial counsel stating at the change of plea hearing, specifically, that he believed that the evidence that he would be able to show, despite pleading guilty to the conspiracy, that the resulting sentence would have been seven and a half years, which could only be achieved through a finding that there was less than five kilograms of cocaine that was involved in this conspiracy. Trial counsel also indicates that, well, maybe it's 121 to 151 months, and this is, again, borne out in the transcript of the change of plea hearing. However, if the resulting guideline sentence was 121 to 151, that was a simple impossibility after the 851 finding. So the district court erred in not framing petitioner's decisions based on advice from counsel that he's receiving, that he could achieve a sentence below 10 years. Why would one then, under those circumstances and based on that advice, decide to cooperate in a case when the best one could potentially receive would be 210 months prior to any kind of cooperation agreement? That's not a rational decision for one to make in any circumstances, and especially a criminal defendant, to make in a situation where he's entirely dependent on the advice of counsel. The district court did not reach the prejudice prong. We would submit that we have proven that the evidence would show that prejudice is met, given that under any of the circumstances, petitioner would have received less than 300 months, which was already a five-year discount off of the bottom of the guidelines, which are 360 months. Unless the panel has any further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Certainly, Mr. Herman. Mr. Bindi. Good morning. May it please the court. Bill Signore was not going to accept any agreement that called for his truthful cooperation. This was his own decision. It was not based on the advice of counsel. It was not based on counsel's estimation of the strengths or weaknesses of the government's case, or any available or viable defenses. It was his own decision. This is a finding of fact made by the district court following an evidentiary hearing. It is supported by the record, and it is not clearly erroneous. Bill Signore was not going to accept the proposed plea offer that the government presented, which called for him to agree that the quantity of according to Bill Signore, this was an impossible figure. So he was never going to accept that plea agreement that called for him to agree to that amount of drug quantity that he was responsible for. Without him agreeing to a cooperation deal with the government, and without him agreeing to the government's guidelines calculation, the option that was chosen and advised by counsel was instead to enter a blind plea, to get whatever benefit there was from pleading guilty, and at the same time leave open all arguments regarding potential guidelines calculations. And a lot has been made about what was said by counsel at the change of plea hearing. Essentially all he was saying was that was in the context of what are the penalties that the The government stated while there's a mandatory minimum, we think, of 20 years based on the filing of the 851 notice, and a statutory maximum of life, and a guideline range that we believe, based on our guidelines calculation, starts at 292 months. And all counsel was saying at the change of plea hearings basically was that we concede none of that, and all options are open, including the validity of the 851 notice, and whether any mandatory minimum applies, and any drug quantity. So the rejection of the plea was based on Villasenor's own personal rejection of any cooperation deal with the government, and his rejection of accepting accountability for a guideline or for a drug quantity of over 150 kilograms. The decision then to withdraw the blind plea, it is argued, was triggered by the filing of the 851 notice, but the record doesn't support this. The fact that an 851 enhancement loomed over this case was clear to Villasenor at least as early as April of 2004, a couple of months before he entered the guilty plea, and a couple of months before the government presented its formal offer of a plea agreement. The only way to avoid that was to accept the plea agreement the government was offering, and he was not going to do that. And he didn't. And he didn't. That takes care of your problem, doesn't it? And so the 851 notice was filed, and it was not unanticipated, he was not blindsided, he knew it was coming. So the decision to withdraw the guilty plea was not based on that, and the district court's findings are not clearly erroneous, and we request that the judgment be affirmed. Thank you. Thank you, Mr. Bindi. Anything further, Mr. Herman? A couple of points, please. Your Honor, regarding the withdrawal of the 851, and this is one point where we submit that the district court erred in a credibility finding, was that trial counsel indicated that he had discussed the 851, the prospect of the 851, repeatedly with Petitioner. Petitioner disputed that the 851 was filed, and in a pleading, in a filing, trial counsel indicated that the 851 came as a surprise. The two facts, the two scenarios cannot exist. Trial counsel's testimony that he consistently advised of the 851 and the pleading that was submitted in a public record, and which formed a basis of the district court's allowance of the withdrawal of the guilty plea. And just to reiterate and to respond to the government's points about this being Petitioner's own decision, criminal defendants don't make decisions to plead guilty, to withdraw pleas, or to go to trial in a vacuum. They rely on the advice of counsel, and in this situation, the advice was that he could prove less than five kilograms. We submit that that was inefficient based on the overwhelming evidence, or ineffective based on the overwhelming evidence and the lack of viable defenses. We respectfully request that the decision be reversed and the case be remanded. Thank you. Thank you very much. Mr. Herman, we appreciate your willingness to accept the appointment in this case. The case is taken under advisement.